IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JENAIL BROWN, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 22-0923-GBW |
| CENTURIAN OF DELAWARE, LLC, et al., | |
| Defendants. | |

## MEMORANDUM ORDER

Plaintiffs[1] brought this civil rights action on behalf of a putative class of prisoner patients in the care and custody of the Delaware Department of Corrections ("DDOC"). D.I. 1. In their Complaint, filed on July 12, 2022, Plaintiffs assert that Defendant Centurian of Delaware, LLC ("Centurian") was deliberately indifferent to Plaintiffs' health and safety when Centurian implemented and enforced a Pain Management Initiative policy in violation of 42 U.S.C. § 1983. *See* D.I. 1 at ¶¶ 383-92. Plaintiffs further allege that Defendants Sheri L. McAfee-Garner, Dr. Emilia Adah, Flora A. Atangcho, Barbara Denkins, William F. Ngwa, and Feeah M. Stewart (collectively, "Individual Centurian Defendants") were deliberately indifferent to Plaintiffs'

---

[1] The Complaint names Jenail Brown, Jeremy Cartwright, Jeffrey Clayton, William Cordell, Bryan Cordrey, Philip Davis, Sean Dupree, James Elliotte, Frankie Galindez, Ronald Grine, Christopher King, Japhis Lampkins, George Leifheit, John Mayhew, James Mccardell, Jeffery Mccray, Gary Palmer, Richard Pandiscio, Stephen Parsons, John Taylor, Joseph Walls, Adam Wenzke, Frank Whalen Jr., and Robert Worley as Plaintiffs. *See* D.I. 1. Plaintiffs claim to have identified at least 106 individuals who suffered injury because of the Pain Management Initiative policy, *see id.* at ¶ 372, and seek to certify a class of putative inmates who were "similarly affected by the Defendants' allegedly wrongful conduct as complained of herein." *Id.* at ¶ 376.

1

medical needs based on the Pain Management Initiative policy, in violation of 42 U.S.C. § 1983. *See id.* at ¶¶ 393-97. Pending before the Court is Centurian and Individual Centurian Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").[2] D.I. 29. The Court has considered the parties' briefing, *see, e.g.*, D.I. 30; D.I. 54; D.I. 60, and finds a hearing on the Motion is unnecessary. For the reasons below, the Court grants-in-part and denies-in-part Centurian and Individual Centurian Defendants' Motion.

## I. BACKGROUND[3]

This suit is brought by twenty-four inmates in custody of DDOC who suffer medical conditions that cause chronic pain ("Plaintiffs"). D.I. 1 at ¶¶ 96-369. Plaintiffs' medical conditions vary, but Plaintiffs all allege that their chronic pain was treated with long-term prescriptions of opioids or opioid alternatives (such as Gabapentin and Pregabalin) until Plaintiffs were tapered off their opioid medications pursuant to a policy implemented and enforced by Defendants known as the "Pain Management Initiative." *Id.* at ¶¶ 58-72. The Pain Management Initiative policy was purportedly implemented in late 2019 by the DDOC, Correct RX Pharmacy Services, Inc. (CRX"), and Connections Community Support Programs ("Connections")[4], and was alleged to have been reimplemented and enforced by Centurian when it took over from Connections as DDOC's inmate healthcare vendor in April 2020. *Id.* at ¶¶ 13, 63, 69-71, 73-74, 384, 391. The Individual Centurian Defendants are all medical providers employed by Centurian who are alleged to have been

---

[2] Defendants Monroe Hudson, Awele Mduka-Ezeh, and Michael Records' Motion to Dismiss (D.I. 58) is not addressed in this Memorandum Order.

[3] Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

[4] CRX was a named defendant to this suit but has since been voluntarily dismissed by Plaintiffs. *See* D.I. 52. Connections is a previous healthcare vendor for DDOC and has not been named as a party to this suit.

deliberately indifferent to Plaintiffs' medical needs by enforcing the Pain Management Initiative Policy. *Id.* at ¶¶ 393-97.

## II. LEGAL STANDARD

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the court to accept all factual allegations in the complaint as true and view them in the light most favorable to plaintiff. *AbbVie Inc*, 976 F.3d at 351. The court may consider matters of public record and documents attached to, "integral to[,] or explicitly relied upon in" the complaint. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (cleaned up); *see also Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738, 739 (3d Cir. 2020) (same). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light

3

most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).

## III. DISCUSSION

Plaintiffs bring constitutional claims for deliberate indifference to serious medical need against Defendants pursuant to 42 U.S.C. § 1983. *See generally* D.I. 1. 42 U.S.C. § 1983 is not itself a source of substantive rights but is rather a vehicle that plaintiffs may use against state actors to redress for alleged violations of rights guaranteed by the United States Constitution or other federal law, including under the Eighth Amendment to the Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *see also Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

### A. § 1983 Claims against Defendant Centurian

Plaintiffs seek relief, pursuant to 42 U.S.C. § 1983, for Centurian's alleged deliberate indifference to the health of Plaintiffs by implementing and enforcing the purported unconstitutional "Pain Management Initiative" policy. *See* D.I. 1 at ¶¶ 383-392. Centurian moves to dismiss this claim, arguing that it cannot be liable under § 1983 because the Complaint alleges that the DDOC and Connections promulgated the unconstitutional "Pain Management Initiative" policy, not Centurian. D.I. 30 at 8-11.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reed*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. This theory of § 1983 liability for constitutional violations based on a municipal entity's policies and customs has been extended to apply to private companies providing prison medical services under contract. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (applying *Monell* to a

4

private company providing medical services to inmates); *Francis v. Carroll*, 659 F. Supp. 2d 619, 625-26 (D. Del. 2009) ("[A]lthough a private corporation offering medical services cannot be held liable for an alleged § 1983 violation under a theory of *respondeat superior*, it can be held liable for a policy or custom that demonstrates deliberate indifference.") (internal quotation marks omitted).

"Under *Monell*, a municipality [or corporation] cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality or corporation can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690-91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality or corporation] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984). Plaintiffs asserting an unconstitutional policy claim "must point to an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). To support an unconstitutional custom claim, Plaintiffs' allegations "must evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Id.* at 106.

5

Here, at this early stage of litigation, Plaintiffs have alleged sufficient facts to state a claim, pursuant to § 1983, against Centurian for its alleged deliberate indifference to the health of Plaintiffs by implementing and enforcing the purported unconstitutional "Pain Management Initiative" policy. The crux of Centurian's argument is that Plaintiffs have failed to allege that the Pain Management Initiative was a policy promulgated by Centurian. D.I. 30 at 10. Rather, other entities, including Connections, CRX, DDOC, and the Bureau of Healthcare, Substance Abuse, and Mental Health Services, implemented the Pain Management Policy in late-2019. D.I. 1 at ¶¶ 63, 383. However, Plaintiffs' Complaint alleges that "[a]fter April of 2020, Defendant Centurian took over the contract for medical services delivery within DDOC from Connections." *Id.* at ¶ 73. In doing so, DDOC "delegated responsibility for providing constitutionally adequate health care to prisoners in DDOC custody to Centurian." *Id.* at ¶ 16. Further, Plaintiffs allege that Centurian personnel were on a board that annually reviews all DDOC policies, *id.* at ¶ 33, and that Centurian is responsible for "assing[ing] each facility a Health Services Administrator ('HSA') who is supposed to 'develop site-specific procedures' for the assigned facility and 'carry out DDOC policies,'" *id.* at ¶ 34. Moreover, Plaintiffs aver that "DDOC, Centurian, and CRX, are jointly tasked with developing, reviewing, editing and finalizing new versions of policies and procedures relative to patient health and healthcare, including verifying that all site-specific procedures comply with all current NCCHC and ACA standards as well as federal law." *Id.* at ¶ 41. As to the specific Pain Management Initiative policy, Plaintiffs allege that, when Centurian took over in April 2020, Centurian did not reassess the Pain Management Initiative nor abate its implementation, but rather adopted and continued to implement the policy. *Id.* at ¶¶ 73-74.

Taking all factual allegations as true, Plaintiffs have adequately pled facts sufficient to state a claim, pursuant to § 1983, against Centurian. Based solely on allegations in the Complaint, the

Court can draw the reasonable inference that, when Centurian was deemed responsible for providing healthcare to DDOC inmates beginning in April 2020, it effectively adopted and enforced the Pain Management Initiative as its own policy. That is, Centurian was "jointly tasked with developing, reviewing, editing and finalizing new versions of policies and procedures relative to patient health and healthcare," and adopted and continued to implement and enforce the Pain Management Initiative policy as its own. *Id.* at ¶ 41, 73-74. That Centurian was not an original author of the Pain Management Initiative policy does not alter this analysis because Plaintiffs have alleged sufficient facts at this juncture such that the Court can reasonably infer that the alleged unconstitutional policy can be attributed to Centurian.[5] *See Losch*, 736 F.2d at 910.

Accordingly, because Plaintiffs have pled sufficient facts to state a claim, pursuant to § 1983, against Centurian, the Court will deny Defendants' Motion to Dismiss Plaintiffs' § 1983 claim against Defendant Centurian (Count I).

### B.  § 1983 Claims against Individual Centurian Defendants

Prison officials violate an inmate's Eighth Amendment right to be free from cruel and unusual punishment when they are deliberately indifferent to an inmate's serious medical needs. *See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (describing two-part standard established in *Estelle v. Gamble*, 429 U.S. 97 (1976)). To plead such a claim, a plaintiff must allege that (1) the medical need is "serious," meaning it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would

---

[5] Centurian attaches as "Exhibit A" to its Motion to Dismiss, the DDOC's "Responsible Health Authority" policy, and argues that this demonstrates that the DDOC, not contractors such as Centurian, are responsible for healthcare policy of inmates. *See* D.I. 30 at 10. Even if the Court were to consider "Exhibit A" as a matter of public record, "Exhibit A" was clearly implemented in January 2022. *See* D.I. 30, Ex. A. As such, it bears no relevance to the Court's analysis of § 1983 claims accruing between 2019 and 2020.

7

easily recognize the necessity for a doctor's attention," and (2) prison officials were deliberately indifferent to that need. *Id.* at 347 (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd*, 649 F.2d 860 (3d Cir. 1981)). While "mere disagreement as to the proper medical treatment [does not] support a claim of an [E]ighth [A]mendment violation," a prison official is deliberately indifferent if he delays necessary medical treatment for nonmedical reasons, has "knowledge of the need for medical care . . . and engages in an intentional refusal to provide that care," or "prevent[s] an inmate from receiving recommended treatment for serious medical needs." *Id.* at 346-47 (internal quotation marks omitted); see *Abu-Jamal v. Kerestes*, 779 Fed. App'x 893, 900 (3d Cir. 2019).

For purposes of this motion, accepting as true Plaintiffs' allegations that they suffered a significant amount of pain, *see generally* D.I. 1 at ¶¶ 96-369, and noting that Defendants do not dispute otherwise, the Court finds it is plausible there was a 'serious medical need." Thus, the crux of the dispute is whether Plaintiffs adequately plead facts sufficient to allege that the Individual Centurian Defendants were "deliberate indifferent" to Plaintiffs' serious medical needs based on the Pain Management Initiative policy. Based solely on allegations in the Complaint, the Court cannot reasonably infer that the Individual Centurian Defendants were "deliberately indifferent" to the serious medical needs of Plaintiffs.

Even drawing all reasonable inferences in favor of Plaintiffs, the allegations reflect that Individual Centurian Defendants were continually providing Plaintiffs with medical attention and exercising their professional medical judgment in connection with the Pain Management Initiative policy. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as [the medical professional] exercises professional judgment [their] behavior will not violate a prisoner's constitutional rights."). For example, with respect to many

of the Plaintiffs' serious medical needs, the Individual Centurian Defendants explained their concerns with habit-forming medication such as Tramadol and, exercising their professional judgment, ordered the Plaintiffs to be tapered off that medication. *See* D.I. 101 at ¶¶ 102, 131, 153, 181, 274. The allegations also demonstrate that, following the implementation of the Pain Management Initiative, Individual Centurian Defendants exercised professional judgment in advising Plaintiffs that Gabapentin was not indicated for their specific chronic pain and, thus, Plaintiffs' use of that medication would be discontinued. *Id.* at ¶¶ 129, 151, 165, 183, 218, 239, 280. Similarly, Plaintiffs acknowledged that, following the implementation of the Pain Management Initiative, Individual Centurian Defendants provided alternative over-the-counter pain medications, such as Tylenol, Motrin, and naproxen, and other alternative pain remedies, including exercise therapy and breathing techniques. *Id.* at ¶¶ 71, 112, 123, 137, 168, 219, 245, 281, 332. These allegations do not indicate that the Individual Centurian Defendants ignored Plaintiffs' serious medical conditions and chronic pain, but rather demonstrate that the Individual Centurian Defendants provided continuing healthcare, reassessments, and alternative pain remedies. *See United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.") (internal quotation marks omitted). That Plaintiffs disagreed with the Individual Centurian Defendants' methods of treatment, or found Individual Centurian Defendants' care inadequate or improper, does not support an Eighth Amendment claim. *See Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978); *McCray v. Williams*, 357 F. Supp. 2d 774, 781 (D. Del. 2005).

More so, Plaintiffs' allegations also demonstrate that, in accordance with providing continuing healthcare, reassessments, and alternative pain remedies, Individual Centurian Defendant reassessed Plaintiffs and re-prescribed various opioid-medications when the Individual Centurian Defendant determined, within their professional judgment, that it was an appropriate treatment for Plaintiffs' pain relief. D.I. 1 at ¶ 71. Some Plaintiffs were even assessed by outside-medical specialists who recommended that Plaintiffs be re-prescribed certain opioid-medications, which Individual Centurian Defendants then provided. *Id.* at ¶¶ 134-38, 261, 276. Based on these allegations, it seems that extensive, albeit ineffective, measures were taken to address Plaintiffs' medical needs. Thus, based solely on Plaintiffs' Complaint and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs have not pled sufficient facts to state a § 1983 claim against the Individual Centurian Defendants.

Accordingly, because Plaintiffs have failed to plead sufficient facts to state a claim, pursuant to § 1983, against the Individual Centurian Defendants, the Court will grant Defendants' Motion to Dismiss Plaintiffs' § 1983 claim against the Individual Centurian Defendants.

### C. Statute of Limitations

Alternatively, Defendants urge the Court to dismiss twenty-three named Plaintiffs from this case because their § 1983 claims are purportedly barred by Delaware's two-year statute of limitations. D.I. 30 at 17-18. Plaintiffs disagree, arguing that its § 1983 claims were equitably tolled while Plaintiffs exhausted their administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"). D.I. 54 at 18. Alternatively, even if the statute of limitations were not tolled during Plaintiffs' administrative exhaustion, Plaintiffs contend that their § 1983 claims are subject to the continuous violation doctrine. *Id.* at 19.

The statute of limitations in a § 1983 action is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). The Delaware statute of limitations for a personal injury action is two years. *See* 10 Del. C. § 8119; *St. Louis v. Haller*, 215 F. Supp. 3d 307, 312 (D. Del. 2016) ("In Delaware, § 1983 claims are subject to a two-year limitations period."). "Section 1983 claims accrue 'when the plaintiff knew or should have known of the injury upon which [his] action is based.'" *St. Louis*, 215 F. Supp. 3d at 312 (quoting *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998)). Contrary to Defendants' position, *see* D.I. 60 at 9, this District has consistently held that the statute of limitations in an action brought by a prisoner under § 1983 is tolled during the time the inmate exhausts his administrative remedies. *See, e.g., Lucas v. Carney*, No. 21-469-LPS, 2022 WL 2116959 (D. Del. June 13, 2022); *Passwaters v. Garner*, No. 22-955-MN, 2022 WL 17669178 (D. Del. Dec. 14, 2022); *McCormick v. Dematteis*, No. 21-1315-VAC, 2022 WL 1462809 (D. Del. May 9, 2022).

### i. All Plaintiffs Except for Plaintiff Galindez[6]

Here, it is not apparent on the face of Plaintiffs' Complaint whether the Plaintiffs pursued and exhausted their respective administrative remedies under the PLRA. As such, the Court cannot reasonably determine the amount of time that passed while Plaintiffs exhausted those administrative remedies. Without knowing how long the limitations period was tolled, the Court cannot determine whether the statute of limitations had expired prior to Plaintiffs filing of this action. Because the Court cannot determine whether Plaintiffs' § 1983 claims are time-barred based on the allegations in the Complaint, the Court cannot dismiss those claims. *See Thomas v.*

---

[6] For this section only, i.e., Section III.C.i, the Court refers to all named Plaintiffs, except for Plaintiff Galindez, collectively as "Plaintiffs."

11

*Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014); *cf. Paluch v. Sec'y, Dep't of Corr.*, 442 F. App'x 690, 694 (3d Cir. 2011). Accordingly, Defendants' Motion to Dismiss Plaintiffs' § 1983 claims as time barred is denied with respect to all Plaintiffs' § 1983 claims, except for Plaintiff Galindez. *See infra* Section III.C.ii.

### ii.     Plaintiff Galindez

The Complaint alleges that Plaintiff Galindez was released from custody before filing this action, *see* D.I. 1 at ¶ 209, meaning the requirement to exhaust his administrative remedies pursuant to the PLRA does not apply. *See Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) ("[A] plaintiff's status as a prisoner for purposes of the PLRA is judged as of the time he files his original complaint."). Plaintiff Galindez alleges that, as a result of the Pain Management Initiative policy, Defendants tapered him off of Gabapentin for a period of thirty days following a December 2019 medical evaluation. *Id.* at ¶ 205. Based on these allegations, the Court can reasonably infer that Plaintiff Galindez knew or should have known of his injury stemming from the Pain Management Initiative policy, at the latest, by the end of January 2020, i.e., approximately thirty days following a December 2019 examination. *See Delaware State College v. Ricks*, 449 U.S. 250, 256-259 (1980) (a claim accrues when injurious action is taken and communicated, not when the "effects" of this action are experienced at a later point); *Chardon v. Fernandez*, 454 U.S. 6, 7-8 (1981) (extending *Ricks* to Section 1983 claims); *see also* D.I. 1 at ¶ 206 ("In January 2020, Mr. Galindez requested Gabapentin to manage his nerve and back pain."). Thus, to fall within the prescribed statutory period, Plaintiff Galindez must have filed his action no later than the end of January 2022. However, this action was filed on July 12, 2022. *See* D.I. 1. Thus, Plaintiff Galindez's § 1983 claim is time-barred by Delaware's two-year statute of limitations.

Plaintiffs attempt to salvage any claims barred by Delaware's two-year statute of limitations, arguing that Plaintiff Galindez's claim is "subject to the continuous violation doctrine." D.I. 54 at 19. "The continuing violations doctrine is an equitable exception to the timely filing requirement." *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001). This doctrine provides that "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Barrett v. McDonald*, 2015 WL 5679732, at *6-7 (D. Del. Sep. 25, 2015) (quoting *Brenner v. Loc. 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)). The purpose of the continuous violations doctrine is to address continuing acts, "not continual ill effects from an original violation." *Cowell*, 263 F.3d at 293 (quoting *Ocean Acres Ltd. v. Dare County Bd. Of Health*, 707 F.2d 103, 106 (4th Cir. 1983).

Here, the continuous violations doctrine will apply to Plaintiff Galindez's § 1983 claim if the Complaint alleges that the last act evidencing the continuing practice occurred on or before July 12, 2020. However, the Complaint alleges that the "last act" Defendants took, with respect to Plaintiff Galindez pursuant to the Pain Management Initiative, was arguably in January 2020 when Defendants declined to re-prescribe Gabapentin and instead offered Plaintiff Galindez a prescription for Elavil. D.I. 1 at ¶ 206. The remaining allegations related to Plaintiff Galindez do not plead any instances or actions occurring after January 2020 where Defendants discontinued opioid-medications or failed to offer effective alternative remedies pursuant to the Pain Management Initiative policy. Thus, because this action was filed on July 12, 2022, the continuous violations doctrine is inapplicable to Plaintiff Galindez's § 1983 claim. Accordingly, Plaintiff Galindez's § 1983 claim is time-barred and, therefore, dismissed with prejudice.

### D. Plaintiffs' Request for Leave to Amend

Plaintiffs also request leave to amend its Complaint "if the Court finds the current pleadings insufficient." D.I. 54 at 27-28. The Third Circuit abides by the liberal policy of allowing amendments to pleadings where there is no indication of bad faith, undue delay, prejudice, or futility. *Alston v. Parker*, 363 F. 3d 229, 235-36 (3d Cir. 2004). Here, Plaintiffs may be able to cure the deficiency of its pleadings with respect to their § 1983 claim against the Individual Centurian Defendants. Coupled with the fact that this is Plaintiffs' first request to amend its Complaint, the Court will grant Plaintiffs' request to amend its Complaint.

### IV. CONCLUSION

Therefore, at Wilmington this 8th day of March, 2023, **IT IS HEREBY ORDERED** that Defendants Centurian and Individual Centurian Defendants' Motion to Dismiss (D.I. 29) is **DENIED** with respect to Count I against Defendant Centurian and **GRANTED** with respect to Count II against the Individual Centurian Defendants. Count II against Individual Centurian Defendants is dismissed without prejudice, and Plaintiffs' request to amend its Complaint is **GRANTED** with respect to Count II against the Individual Centurian Defendants. Finally, because Plaintiff Galindez's claims are time-barred by Delaware's statute of limitations, **IT IS HEREBY ORDERED** that Plaintiffs Galindez's claims are dismissed with prejudice.

GREGORY B. WILLIAMS<br>
UNITED STATES DISTRICT JUDGE